# LOAN MODIFICATION AGREEMENT
(Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), will become effective on: 1ST day of JANUARY, 2014, between MELISSA J SCHULTZ-NIELSEN ("Borrower") and JPMORGAN CHASE BANK, N.A. ("Lender") amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed ("Security Instrument"), and Timely Payment Rewards Rider, if any, dated SEPTEMBER 25, 2001 and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real property described in the Security Instrument and defined therein as the "Property", located at

14 MIDDLE ST, RANDOLPH, MAINE 04346
(Property Address)

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of JANUARY 01, 2014, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $68,131.19 consisting of the unpaid amount(s) loaned to the Borrower by the Lender plus any interest and other amounts capitalized.

2. The Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of the Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of 7.375%, from DECEMBER 01, 2013. The Borrower promises to make monthly payments of principal and interest of U.S. $442.07, beginning on the 1ST day of JANUARY, 2014, and continuing thereafter on the same day of each succeeding month until the principal and interest are paid in full. The yearly rate of 7.375% will remain in effect until the principal and interest are paid in full. If on DECEMBER 01, 2053 ("Maturity Date"), the Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, the Borrower will pay these amounts in full on the Maturity Date.

3. If all or any part of the Property or any interest in the Property is sold or transferred (or if the Borrower is not a natural person and a beneficial interest in the Property is sold or transferred) without the Lender's prior written consent, the Lender may require immediate payment in full of all sums secured by the Security Instrument.

   If the Lender exercises this option, the Lender shall give the Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which the Borrower must pay all sums secured by the Security Instrument. If the Borrower fails to pay these sums prior to the expiration of this period, the Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on the Borrower.

4. The Borrower understands and agrees that:

   (a) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

EXHIBIT K

(b) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, or by the United States Bankruptcy Code, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of the Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which the Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by the Lender.

(c) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d) All costs and expenses incurred by the Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by the Lender

(e) The Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by the Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

(f) That, if the Borrower is in bankruptcy upon execution of this document, the Borrower will cooperate fully with the Lender in obtaining any required bankruptcy court and trustee approvals in accordance with local court rules and procedures. The Borrower understands that if such approvals are not received, then the terms of this Agreement will be null and void. If this Agreement becomes null and void, the terms of the original Loan Documents shall continue in full force and effect and such terms shall not be modified by this Agreement.

5. If the Borrower previously received a chapter 7 bankruptcy discharge but did not reaffirm under applicable law amounts due under the Note:

   (a) Notwithstanding anything to the contrary contained in this Agreement, the Borrower and the Lender acknowledge the effect of a discharge in bankruptcy that, if granted to the Borrower prior to the execution of this Agreement,
   (b) The Lender may not pursue the Borrower for personal liability. However, the Borrower acknowledges that the Lender retains certain rights, including but not limited to, the right to foreclose its lien evidenced by the Security Instrument under appropriate circumstances.
   (c) The parties agree that the consideration for this Agreement is the Lender's forbearance from presently exercising its rights and pursuing its remedies under the Security Instrument as a result of the Borrower's default thereunder.
   (d) Nothing in this Agreement shall be construed to be an attempt to collect against the Borrower personally or an attempt to revive personal liability.

6. The Borrower hereby absolutely and unconditionally assigns and transfer to the Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon this assignment, the Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in the Lender's sole discretion. As used in this paragraph, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold estate.

   The Borrower hereby absolutely and unconditionally assigns and transfers to the Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are

payable. The Borrower authorizes the Lender or the Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to the Lender or the Lender's agents. However, the Borrower shall receive the Rents until (i) the Lender has given the Borrower notice of default under this Agreement, pursuant to Section 22 of the Security Instrument, and (ii) the Lender has given notice to the tenant(s) that the Rents are to be paid to the Lender or the Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If the Lender gives notice of default to the Borrower: (i) all Rents received by the Borrower shall be held by the Borrower as trustee for the benefit of the Lender only, to be applied to the sums secured by the Security Instrument; (ii) the Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) the Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to the Lender or the Lender's agents upon the Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by the Lender or the Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) the Lender, the Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) the Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by the Lender for such purposes shall become indebtedness of the Borrower to the Lender secured by the Security Instrument pursuant to Section 9 of the Security Instrument.

The Borrower represents and warrants that the Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent the Lender from exercising its rights under this paragraph.

The Lender, or the Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to the Borrower. However, the Lender, or the Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of the Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

7. By this paragraph, the Lender is notifying the Borrower that any prior waiver by the Lender of the Borrower's obligation to pay to the Lender Funds for any or all Escrow Items is hereby revoked, and the Borrower has been advised of the amount needed to fully fund the Escrow Items.

8. If the original loan documents did not include standard provisions for escrow items, the Borrower will pay to the Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by the Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to the Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that the Lender requires to be escrowed.

These items are called "Escrow Items." The Borrower shall promptly furnish to the Lender all notices of amounts to be paid under this paragraph. The Borrower shall pay the Lender the Funds for Escrow Items unless the Lender waives the Borrower's obligation to pay the Funds for any or all Escrow Items. The Lender may waive the Borrower's obligation to pay to the Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, the Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by the Lender and, if the Lender requires, shall furnish to the Lender receipts evidencing such payment within such time period as the Lender may require. The Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If the Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and the Borrower fails to pay the amount due for an Escrow Item, the Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and the Borrower shall then be obligated to repay to the Lender any such amount. The Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, the Borrower shall pay to the Lender all Funds, and in such amounts, that are then required under this paragraph.

The Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit the Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. The Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including the Lender, if the Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. The Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. The Lender shall not charge the Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless the Lender pays the Borrower interest on the Funds and applicable law permits the Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, the Lender shall not be required to pay the Borrower any interest or earnings on the Funds. The Lender and the Borrower can agree in writing, however, that interest shall be paid on the Funds. The Lender shall provide the Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, the Lender shall account to the Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, the Lender shall notify the Borrower as required by RESPA, and the Borrower shall pay to the Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, the Lender shall notify the Borrower as required by RESPA, and the Borrower shall pay to the Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, the Lender shall promptly refund to the Borrower any Funds held by the Lender.

(SIGNATURES CONTINUE ON FOLLOWING PAGES)

## TO BE SIGNED BY BORROWER ONLY

**BORROWER** SIGNATURE PAGE TO MODIFICATION AGREEMENT BETWEEN JPMORGAN CHASE BANK, N.A. And MELISSA J SCHULTZ-NIELSEN, LOAN NUMBER            WITH A MODIFICATION EFFECTIVE DATE OF January 01, 2014

In Witness Whereof, the Borrower(s) have executed this agreement.

_____    Date: 12/16/2013
Borrower - MELISSA J SCHULTZ-NIELSEN

Loan Number

## TO BE SIGNED BY LENDER ONLY

**LENDER** SIGNATURE PAGE TO MODIFICATION AGREEMENT BETWEEN JPMORGAN CHASE BANK, N.A. And MELISSA J SCHULTZ-NIELSEN, LOAN NUMBER            WITH A MODIFICATION EFFECTIVE DATE OF January 01, 2014

In Witness Whereof, the Lender has executed this Agreement.

Lender

**JPMORGAN CHASE BANK, N.A.**

By: _Cathleen Birli_

Printed Name:
Cathleen Birli
Vice President

Date: 12-23-13